UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHNNY BURKE,

        Plaintiff/Counter-Defendant,        Case No. 16-cv-11220

v        Honorable Thomas L. Ludington

CUMULUS MEDIA, INC.,

        Defendant/Counter-Plaintiff.

and

BONNIE HOLZHEI,

        Plaintiff/Counter-Defendant,        Case No. 16-cv-11221

v        Honorable Thomas L. Ludington

CUMULUS MEDIA, INC.,

        Defendant/Counter-Plaintiff.

_____/

**OPINION AND ORDER DENYING MOTION TO DISMISS AND COMPEL ARBITRATION, AND DENYING MOTION FOR PROTECTIVE ORDER AS MOOT**

On February 18, 2016 Plaintiffs Johnny Burke and Bonnie Holzhei (together "Plaintiffs") commenced separate actions against their former employer, Defendant Cumulus Media, in Michigan state court in the county of Saginaw. Compl., ECF No. 1 Ex. A. Plaintiffs allege that Defendant terminated their employment as morning radio hosts at a local broadcast station, WHNN-FM/96.1 of Saginaw, Michigan ("WHNN"), because of their ages in violation of the Elliot Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq.* ("ELCRA"). Plaintiff Holzhei also claims that Defendants discriminated against her because of her gender in violation of ELCRA.

Defendant removed the actions to this Court on April 4, 2016, asserting diversity jurisdiction under 28 U.S.C. § 1332. *See* ECF No. 1.

On April 11, 2016 Defendant Cumulus Media filed answers to Plaintiffs' complaints, along with fourteen counterclaims. *See* ECF No. 4. Defendant's counterclaims rest on allegations that, by broadcasting an internet morning show following their termination, Plaintiffs violated non-compete agreements between the parties and impermissibly accessed Defendant's confidential business information. *Id*. Defendant then filed motions for preliminary injunctions against each Plaintiff on April 18, 2016, seeking an order (1) enjoining Plaintiffs from continuing to broadcast the Internet Show in violation of their employment agreements; (2) enjoining Plaintiffs from continuing to use Cumulus's confidential information, continuing to use the name "Blondie", and continuing to solicit Cumulus's current and former advertisers; (3) requiring Plaintiffs to make a detailed accounting of income generated from their competing activities; (4) requiring Plaintiffs to return all of Cumulus's confidential documentation and any record of trade secrets; (5) allowing the immediate commencement of discovery; and (6) awarding Cumulus attorney's fees, costs and interest pursuant to the parties' employment agreements. *See* ECF No. 8.

Defendant's motions for preliminary injunctions were granted in part and denied in part on July 15, 2016. *See* ECF No. 27. Defendant's request for an immediate commencement of discovery was also denied as moot, as discovery had already commenced under a scheduling order issued by the Court on May 3, 2016. *See* ECF No. 14. Defendant now moves to compel arbitration under terms of the Plaintiffs' contracts. *See* ECF No. 28. Defendant has also moved for protective orders to preclude the taking of any discovery. Because Defendant has waived its ability to seek enforcement of any arbitration provision, its motions will be denied.

I.

WHNN is a broadcast station that has operated out of the Saginaw area for more than six decades. *See* Countercl. ¶ 10. WHNN was originally owned and operated by Citadel Broadcasting. In 2011 Defendant Cumulus acquired Citadel Broadcasting, thereby becoming the owner and operator of numerous Michigan-based radio stations including WHNN. *Id.* at ¶ 8. Following the acquisition Cumulus continued to use the call sign WHNN in association with all programming on the broadcasting station. *Id*. at ¶ 11.

A.

Plaintiffs Burke and Holzhei are residents of Saginaw, Michigan. *See* Compl. ¶ 5. Burke, who had served as a radio host on WHNN for around two decades, was known for the morning radio show he hosted, "Johnny Burke and the Morning Crew" (the "Radio Show"). *See* Countercl. ¶ 13. The Radio Show featured regular on-air participants, including Plaintiff Holzhei who appeared under the alias "Blondie." *Id*. at ¶¶ 14-15. The Radio Show followed a regular format, with distinctive, recurrent segments based on the time of day or the day of the week. *Id*. at ¶¶ 16-17. Defendant's witness Julia Richardson acknowledged that Plaintiffs are "legends" in local radio.

i.

Prior to Cumulus's acquisition of Citadel Broadcasting, on March 16, 2010 Holzhei entered into an employment agreement with Citadel Broadcasting. *See* H. Employment Agreement, ECF No. 8 Ex. A. Pursuant to the agreement, Holzhei earned $31,000 in annual compensation. *Id*. at ¶ 4. From March 16, 2010 to March 15, 2011, Holzhei could only be terminated for specific cause or through use of specific procedures, after which the employment reverted to "at-will." *Id*. at ¶¶ 2, 8.

Holzhei's employment agreement contains the following arbitration provision:

> Except for Employer-initiated disputes arising under or in connection with Sections 11 [exclusive negotiations], 12 [non-competition], 13 [non-solicitation], or 16 [confidentiality], all disputes arising under or in connection with this Agreement or concerning in any way Employee's employment, including but not limited to all contract, tort, quasi-contract, discrimination, retaliation, or statutory claims, shall be submitted exclusively to arbitration in Saginaw, MI under the Employment Arbitration Rules of the American Arbitration Association then in effect, and the decision of the arbitrator shall be final and binding upon the parties. Such arbitration shall [be] final and binding on the parties and shall be the exclusive remedy for arbitrable claims. Employer and Employee hereby waive any rights each may have to a jury trial in regard to the arbitrable claims….

*See* H. Employment Agreement ¶ 22.

Holzhei's Employment Agreement also contains a provision specifically authorizing her employer to seek injunctive relief and monetary damages in the event of a breach of the agreement:

> Employee recognizes that the services to be rendered by Employee hereunder are of special, unique, unusual, extraordinary and intellectual character, are of an artistic and professional nature, require skill of the highest order, and further are of peculiar value, the loss of which cannot be adequately compensated for in damages…in the event of any breach of the provisions of this Agreement by the Employee, Employer shall be entitled, *if it so elects*, to institute and prosecute proceedings…to obtain damages, attorney's fees, costs, to enforce specific performance of such provisions, to restrain and/or enjoin Employee[.] Because a remedy at law for any breach of this provision may be inadequate, Employee agrees that…Employer shall have the remedies of a restraining order, injunction or other equitable relief to enforce the provisions hereof without posting bond and without the showing of irreparable injury.

*Id*. at ¶ 18 (emphasis added). Holzhei's Employment Agreement further provides that it is assignable to any entity that succeeds to ownership of the employer, and that such assignment could be effected without consent of Holzhei and without any additional consideration or notice to Holzhei. *Id*. at ¶ 19.

### ii.

Also prior to Cumulus's acquisition of Citadel Broadcasting, on September 13, 2011 Plaintiff Johnny Burke entered into an employment agreement with Citadel Broadcasting (Burke's "2011 employment agreement"). That agreement contains an arbitration provision identical to the provision found in Holzhei's contract, stating as follows:

> Except for Employer-initiated disputes arising under or in connection with Sections 11 [exclusive negotiations], 12 [non-competition], 13 [non-solicitation], or 16 [confidentiality], all disputes arising under or in connection with this Agreement or concerning in any way Employee's employment, including but not limited to all contract, tort, quasi-contract, discrimination, retaliation, or statutory claims, shall be submitted exclusively to arbitration in Saginaw, MI under the Employment Arbitration Rules of the American Arbitration Association then in effect, and the decision of the arbitrator shall be final and binding upon the parties. Such arbitration shall [be] final and binding on the parties and shall be the exclusive remedy for arbitrable claims. Employer and Employee hereby waive any rights each may have to a jury trial in regard to the arbitrable claims….

*See* B. 2011 Employment Agreement ¶ 22, ECF No. 28 Ex. 3.

Unlike Holzhei, Burke entered into a new employment agreement with Defendant Cumulus in 2012. On June 21, 2012 Scott Meier, the regional vice president of Defendant Cumulus, sent a memorandum to Burke regarding his compensation plan. *See* B. Compensation Memo, ECF No. 4 Ex. B. The plan provided that Burke would have a base salary of $125,000 per year. *Id.* Five percent of Burke's base salary was to be in consideration for Burke's agreement to be bound by an exclusive negotiation provision and a six-month non-compete agreement. *Id.* The compensation memorandum concluded with a space for Burke's signature, above which is set forth:

> I understand and voluntarily accept the foregoing compensation plan as outlined above. I acknowledge that this Memorandum, the Cumulus Handbook, and the Confidentiality, Non-Competition, and Non-Solicitation Agreement set forth the full terms of my employment with Cumulus, and supersedes all previous inconsistent agreements, understandings, terms or conditions, either express or implied. I further understand that my Market Manager can modify this compensation plan at any time without notice, unless required by law. Finally, I acknowledge the fact that nothing in this document alters the fact I am an "at

> will" employee, meaning that Cumulus or I may terminate this employment relationship an any time for any reason.

*Id.* Burke signed the compensation memorandum on June 25, 2012.

Burke also entered into a Confidentiality, Non-Competition, and Non-Solicitation Agreement (Burke's "2012 employment agreement"), as referenced in the compensation memorandum. *See* B. 2012 Employment Agreement, ECF No. 8 Ex. 2. The employment agreement was signed by the regional vice president of Citadel Broadcasting on June 27, 2012, and by Plaintiff Burke on an unspecified date. With regard to the employment relationship between the parties, the 2012 employment agreement contains the following provision:

> **10. ENTIRE UNDERSTANDING; AMENDMENTS.** This Agreement, as well as any attachments or exhibits, constitutes the entire agreement and understanding between the parties with respect to the employment of Employee by the Company, and supersedes all prior agreements, representations and understandings, both written and oral, between the parties with respect to the subject matter hereof. This Agreement may not be modified or changed except by written instrument signed by both parties.

*Id.* As part of the agreement, Burke agreed that "if Employee breaches or threatens to breach any of the provisions … the Company shall be entitled to immediate injunctive relief to enforce this Agreement, money damages for whatever harm such breach causes the Company, and whatever other remedies are available." *Id.* Burke also agreed "to pay all costs, expenses, and/or charges, including reasonable attorneys' fees, incurred by the Company in successfully enforcing any of the provisions hereof." *Id.* at ¶ 14.

**B.**

Defendant alleges that after the Radio Show received declining ratings in 2013, it encouraged Burke and Holzhei to use alternative broadcasting technology to enhance the show, including recording Podcasts and posting video content on Facebook and Periscope. *See* Countercl. ¶¶ 18-21. Defendant also alleges that it also encouraged Burke to play more music on

the show. *See* Tr. While Plaintiffs accepted the recommendation to promote the Radio Show and broadcasting content on Periscope in 2015, Defendant alleges that Plaintiffs rejected its recommendation that they play more music. *Id.* at ¶ 21.

Defendant Cumulus terminated Plaintiffs' employment on January 15, 2016. Defendant alleges that Plaintiffs were terminated after the Radio Show continued to receive declining ratings, and after Plaintiffs refused to accept Defendant's suggestion to play more music. *See* Countercl. ¶¶ 18-21. Plaintiffs allege that they were terminated because of their ages in violation of ELCRA, as evidenced by the fact that Defendant Cumulus replaced them with two individuals in their 30's. *See* Coml. ¶¶ 19-20. Plaintiff Holzhei also argues that Defendant discriminated against her because of her gender in violation of ELCRA.

Soon after their terminations, Holzhei and Burke began webcasting a morning audio show via Periscope called "Johnny and Blondie Live" (the "Internet Show"). *See* Rep. to Mot. 1, ECF No. 13. The Internet Show follows a similar format to the former Radio Show, and Holzhei continues to use the name "Blondie." *Id.* Defendant alleges that the Internet Show features the same promotional events, guests, programming content, theme, and schedule as the former radio show. *See* Mot for Prelim. Inj. 3. Defendant further alleges that Plaintiffs use Cumulus's FCC registered call sign "WHNN" in association with their Internet Show. *Id.* Finally, Defendant alleges Plaintiffs have solicited Cumulus's advertisers by using Cumulus's confidential information in violation of the Employment Agreement, and that Cumulus has already lost at least one advertiser due to their conduct. *Id.*

**C.**

In response to their terminations, on February 18, 2016 Plaintiffs each filed suit against Defendant Cumulus in Saginaw County Court. Cumulus removed the actions to this Court on

April 4, 2016 asserting diversity jurisdiction under 28 U.S.C. § 1332. *See* ECF No. 1. Also on that date Cumulus sent cease and desist letters to Plaintiffs, arguing that through broadcasting "Johnny and Blondie Live" they were in violation of non-compete provisions contained in the parties' employment agreements.

Defendant Cumulus filed answers to Plaintiffs' complaints on April 11, 2016. *See* ECF No. 3. Cumulus also filed the following fourteen counterclaims relating to the broadcast of "Johnnie and Blondie Live": (1) Breach of provisions in the parties' employment agreements restricting their ability to compete with Cumulus; (2) Tortious interference with Cumulus's contracts with sponsors and advertisers; (3) Tortious interference with business relationships and expectancies with Cumulus's listener base, customers, sponsors, and potential sponsors; (4) Unjust enrichment; (5) Unfair competition; (6) Violation of the Michigan Consumer Protection Act; (7) Misappropriation of trade secrets in violation of Michigan's Uniform Trade Secrets Act, M.C.L. § 445.1901 *et seq.* ("UTSA"); (8) Violation of the Anti-Cybersquatting Protection Act, 15 U.S.C. § 1125(a), through the use of the call sign "WHNN"; (9) Trademark infringement; (10) Statutory conversion of confidential information under M.C.L. § 600.2919(a); (11) Common law conversion of proprietary, confidential information; (12) Civil conspiracy to commit the foregoing; (13) A request for accurate accounting of Plaintiffs' books and records to determine the extent of damages; and (14) a request for injunctive relief. *See* Countercl. ¶¶ 77-162.

Defendant then filed a motion for a preliminary injunction against each Plaintiff on April 18, 2016. *See* Mot. for Prelim. Inj., ECF No. 8. In its motions Cumulus requested preliminary injunctions enjoining Plaintiffs from using Cumulus's confidential information and soliciting Cumulus's advertisers, requiring Plaintiffs to make a detailed accounting of income generated

from the internet show, requiring Plaintiffs to return any and all of Cumulus's proprietary and confidential documentation and directing the payment of fees and costs. *Id*. The motions also contained requests for the Court to issue orders allowing the parties to immediately commence discovery. *Id*. Defendant's motions were granted in part and denied in part on July 15, 2016. ECF No. 27.

## II.

Defendant now moves to dismiss all claims and compel arbitration pursuant to the employment contracts under the Federal Arbitration Act ("FAA"). The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements in an effort to place arbitration agreements upon the same footing as other contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 11 (2001). Section 2 of the FAA provides:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 218, (1985) (citing 9 U.S.C. §§ 3–4). An arbitor's power to hear claims does not arise from law governing jurisdiction, but from the contract of the parties.

## A.

The first pertinent question is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement. *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014). "Because arbitration agreements are fundamentally contracts, [courts] review the enforceability of an arbitration agreement according

to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir.2007) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). "The federal policy favoring arbitration, however, is taken into account even in applying ordinary state law." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). The party seeking to enforce a contract has the burden of showing that it exists. *See Kamalnath v. Mercy Mem'l Hosp. Corp*, 487 N.W.2d 499, 504 (Mich. App. 1992).

Holzhei does not dispute that her 2011 Employment Agreement contains a valid arbitration agreement. Burke, on the other hand, does not challenge that his 2011 Employment Agreement contains a valid arbitration agreement, but argues that the 2011 Employment Agreement was superseded by his later agreements with Defendant Cumulus. In support of this agreement Burke points to his 2012 Employment Agreement, which provides that "[t]his Agreement, as well as any attachments or exhibits, constitutes the entire agreement and understanding between the parties with respect to the employment of Employee by the Company, and supersedes all prior agreements, representations and understandings, both written and oral, between the parties with respect to the subject matter hereof." *See* B. 2012 Employment Agreement ¶ 10. Defendant Cumulus disagrees, arguing that the 2012 agreements superseded only *inconsistent* prior provisions. In support of this argument, Defendant points to the 2012 Compensation Memorandum's provision where Burke acknowledged "that this Memorandum, the Cumulus Handbook, and the Confidentiality, Non-Competition, and Non-Solicitation Agreement set forth the full terms of my employment with Cumulus, and supersedes all previous *inconsistent* agreements, understandings, terms or conditions, either express or implied." *See* B. Compensation Memo (emphasis added).

Defendant's argument is without merit. The Compensation Memorandum does not state that it supersedes previous inconsistent *provisions*, but previous inconsistent *agreements*. Furthermore, by its terms the Compensation Memorandum, together with the Cumulus Handbook and the 2012 Employment Agreement "set forth the full terms of [Burke's] employment with Cumulus." This reading is bolstered by the 2012 Employment Agreement's provision that "[t]his Agreement, as well as any attachments or exhibits, constitutes the entire agreement and understanding between the parties with respect to the employment of Employee by the Company, and supersedes all prior agreements …." *See* B. 2012 Employment Agreement ¶ 10. Because both later agreements superseded the 2011 Employment Agreement, Burke is not subject to any arbitration provision. Even if Burke was subject to such a provision, Defendant has waived its ability to enforce arbitration, as explained below.

**B.**

Once a party meets the burden of showing the existence of an arbitration agreement, there is a presumption that the agreement is valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). A plaintiff may rebut the presumption of validity only by raising generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

A Plaintiff may also argue that a defendant has waived its right to enforce an arbitration agreement. "[T]here is a strong presumption in favor of arbitration, and ... waiver of the right to arbitration is not to be lightly inferred." *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003) (quotation and citations omitted). "However, a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are

completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.' " *Hurley v. Deutsche Bank Trust Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010) (quoting *Hornell Brewing*, 340 F.3d at 356).

### i.

Plaintiffs argue that by removing the actions to this Court, filing fourteen counterclaims, seeking and receiving injunctive relief, seeking to engage in discovery, and engaging in discovery Defendant has acted completely inconsistently with any reliance on the arbitration agreements. Defendant argues that its actions are not "completely inconsistent" with reliance on the arbitration agreement because the parties' contracts specifically allow Defendant to initiate an action for injunctive relief to enforce specific contract terms.

Defendant's argument is without merit, first because neither suit was employer-initiated. Instead the suits were initiated by Plaintiffs Burke and Holzhei, who filed the actions in Michigan state court. That Defendant removed the action to this Court does not change this fact, as a notice of removal is simply a mechanism to bring a suit into Federal Court and does not change the identity of the parties or the nature of the action. In other words, at the time of removal Plaintiffs remained the plaintiffs and Defendant remained the defendant.

Moreover, Defendant's claims in each suit goes beyond the simple breach-of-contract actions permitted under ¶ 22 of the 2011 employment agreements. Only two of the fourteen counterclaims raised by Defendant after removal seek injunctive relief based on a breach of contract theory. Defendant's remaining twelve claims allege a variety of violations of state and federal statutory law and state common law. Defendant's counterclaims seek damages as well as injunctive relief. Finally, and most inconsistently, Defendant's counterclaims request an order

allowing the immediate commencement of discovery. *See Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) (holding that the defendant acted inconsistently with an arbitration provision and participated in litigation when it filed counterclaims and actively scheduled and requested discovery).

After filing its counterclaims, Defendant proceeded to file motions for preliminary injunctions that required extensive briefing by both parties, three days of motion hearings, and the use of extensive Court resources. Defendant did not base its request for injunctive relief solely on the contracts – as arguably permitted by ¶ 22 of the 2011 employment agreements – but sought relief based on all fourteen counterclaims. Through its motions for preliminary injunctions Defendant again sought leave to immediately commence discovery. This portion of the motion was denied because discovery had already commenced under the Court's scheduling order; a scheduling order that was issued only after Defendant Cumulus submitted statements to the Court outlining its discovery plan in each case. *See* ECF No. 5. In its discovery statements Defendant requested five months of discovery, noted its intent to take depositions and conduct written discovery, and stated its anticipation that each trial could last ten or more days.

After Plaintiffs initiated suits against it in state court Defendant could have filed motions to dismiss or compel arbitration. Instead, Defendant removed the action to this Court, thereby submitting to its jurisdiction, and engaged in aggressive litigation for four months. *See Manasher v. NECC Telecom*, 310 F. App'x 804, 807 (6th Cir. 2009) (holding that a defendant acted completely inconsistent with an arbitration agreement, and had thus waived its right to arbitrate, by actively participating in litigation for almost a year before seeking to compel arbitration). Only after Defendant received an adverse ruling on its motions for injunctive relief did it seek to compel arbitration. In *St. Mary's Medical Center of Evansville v. Disco Aluminum Production*

*Company*, the Seventh Circuit determined that a district court did not err in finding that a defendant had acted completely inconsistently with an arbitration agreement by participating in litigation for ten months, filing a motion to dismiss, and raising arbitration only after it lost its motion. 969 F.2d 585, 589 (7th Cir. 1992). The Court noted that "[e]specially telling was [defendant's] motion to dismiss. Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum." *Id.* 589. In a similar way, Defendant Cumulus's conduct with regard to its counterclaims and motions for preliminary injunctions is equally inconsistent with any arbitration agreement.

**ii.**

Having determined that Defendant's actions were "completely inconsistent" with an exercise of the arbitration agreements, the next inquiry is whether Defendant's delay has resulted in prejudice to Plaintiffs. Plaintiffs argue that it has. "Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Johnson,* 680 F.3d at 719-20 (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)).

By raising fourteen counterclaims and seeking extensive injunctive relief Defendant forced Plaintiffs to incur extensive costs in this forum. As noted above, the employment agreements only arguably authorized Defendant to obtain injunctive relief on two of the fourteen claims. Plaintiffs not only incurred costs arising out of three days of hearings, but also incurred costs necessary for their attorneys to file responses and conduct research into Defendant's

numerous counterclaims. Plaintiffs also incurred costs related to initiating discovery. *Johnson*, 680 F.3d at 720 (holding that plaintiffs were prejudiced where the defendant delayed seeking arbitration for eight months, during which time plaintiffs incurred expenses from numerous scheduled motions, settlement discussions, and discovery). This conduct has caused actual prejudice to Plaintiffs. For these reasons, Defendant's motions to compel arbitration and its motions for protective orders will be denied.

### III.

Accordingly, it is **ORDERED** that Defendant's motions to dismiss and compel arbitration (Case No. 16-cv-11220, ECF No. 28; Case No. 16-cv-11221, ECF No. 25) are **DENIED**.

It is further **ORDERED** that Defendant's motions for protective orders (Case No. 16-cv-11220, ECF No. 32; Case No. 16-cv-11221, ECF No. 28) are **DENIED as moot**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 11, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 11, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager